**Katelyn S. Oldham, OSB #024115**
Email: katelyn@oldhamlawoffice.com
**OLDHAM LAW OFFICE**
12275 SW 2nd Street
Beaverton, Oregon 97005
Telephone: (503) 596-2696

    Of Attorneys for Plaintiff


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SARAH COLLINS**, an individual, | Case No. |
| Plaintiff | **COMPLAINT** |
| v. | (WHISTLEBLOWER COMPLAINT; WRONGFUL DISCHARGE; VIOLATIONS OF THE FAIR LABOR STANDARDS ACT) |
| **PEACEHEALTH,** a foreign nonprofit corporation with its primary location in Vancouver, Washington | **DEMAND FOR JURY TRIAL** |
| Defendant | |


## NATURE OF THE ACTION

1.

This is an action for declaratory and injunctive relief, and for economic and punitive

damages arising out of Defendant PeaceHealth's acts of retaliation and wrongful termination of

the Plaintiff, Sarah Collins, a registered nurse. During her employment, Plaintiff acted as a

whistleblower, making several complaints to PeaceHealth administrators and managers and to

outside regulatory agencies about unsafe conditions for patients and for staff. PeaceHealth


PAGE 1 - COMPLAINT

responded by retaliating against Plaintiff for these protected activities and ultimately terminated Plaintiff's employment because of her whistleblowing activities.

This is also an action for unpaid wages and retaliation for reporting wage and hour violations in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. §§201-219 ("FLSA").

## JURISDICTION AND VENUE

2.

This court has original jurisdiction over Plaintiff's claims for unpaid wages 28 U.S.C. §1331 and 29 U.S.C. §216(b) for violations of the FLSA. This court also has diversity jurisdiction over the action pursuant to 28 U.S.C. §1332. Plaintiff resides in Multnomah County, Oregon, and her former employer, PeaceHealth, is incorporated with its principal place of business in Vancouver, Washington.

3.

Pursuant to 28 U.SC. §1391 venue is proper in this court as Plaintiff resides in Multnomah County, Oregon and Defendant regularly does business in this jurisdiction.

## PARTIES

4.

Sarah Collins is the Plaintiff. She resides in Portland, Oregon. Until her termination, Collins worked at the PeaceHealth hospital facility located in Vancouver, Washington.

5.

PeaceHealth is the Defendant. It is a foreign nonprofit with its primary location in Vancouver, Washington.

PAGE 2 - COMPLAINT

OLDHAM LAW OFFICE, LLC
12275 SW 2ND STREET
BEAVERTON, OR 97005
TEL: (503) 596-2696

## **GENERAL ALLEGATIONS**

6.

Plaintiff is a Registered Nurse. At all relevant times, she was independently certified as an acute/critical care nurse.

7.

On or about May 2016, Plaintiff began working at Defendant PeaceHealth's (hereinafter "Defendant" or "PeaceHealth") hospital facility in the intensive care unit ("ICU") in Vancouver, Washington.

8.

Until the events described herein, Plaintiff had received positive performance evaluations and had never been disciplined by PeaceHealth.

9.

During the COVID-19 pandemic, beginning in 2019 and continuing until her termination, Plaintiff was a vocal advocate of patient safety, quality of care, and of hospital staff safety. Plaintiff was critical of PeaceHealth's health and safety protocols during the pandemic and the inadequate protections for workers and patients. Plaintiff reported her concerns about patient safety and inadequate workplace safety during the pandemic to PeaceHealth and to outside agencies, including the Washington State Department of Health ("Health Department").

10.

In March of 2020, Plaintiff and other nurses filed a written complaint by email to their managers and to an executive at PeaceHealth, expressing concerns about the health and safety protocols at PeaceHealth. They requested that nurses be provided training and testing in the use of

PAGE 3 - COMPLAINT

safety equipment to prevent the transmission and spread of Covid-19, that more space be allocated to properly isolate and treat contagious patients and suggested implementing new policies for visitors and staff to prevent and slow the spread of the pandemic.

11.

On April 27, 2020, Plaintiff filed a complaint with the Health Department regarding the unsafe and inadequate response of PeaceHealth to the COVID-19 pandemic, including but not limited to, failing to fit test employees for respirators before use and failing to properly sanitize surfaces at the PeaceHealth hospital facility in Vancouver, Washington. Plaintiff's complaint resulted in the Health Department making substantiated findings against PeaceHealth and issuing corrective action against PeaceHealth.

12.

Also in April of 2020, Plaintiff appeared in an Oregon Public Broadcasting report where she publicly expressed concerns about Defendant's health and safety protocols at the hospital and ability to protect employees and patients.

13.

In December of 2020, Plaintiff learned that a Rapid Response Team position had been given to a less experienced candidate who had less seniority than Plaintiff and without being publicly posted. This was not the normal process for such positions and had previously been the subject of a complaint by the Washington State Nurses Association ("WSNA"), the labor organization Plaintiff was a member of. Plaintiff would have applied for the position had position been publicly posted. When Plaintiff asked her manager, Jimmy Chan ("Chan"), about the position not being posted and expressed that she would have liked to have had an opportunity to apply, he

PAGE 4 - COMPLAINT

told her that he had been "warned" about Plaintiff and made statements indicating that PeaceHealth management had animus toward her because of her protected activities. Plaintiff asked whether she should look for a new position with a different employer due to PeaceHealth managers' negative attitude toward her. Chan admitted to Plaintiff that "it would not be a bad idea" for Plaintiff to look for work outside of PeaceHealth.

14.

After this conversation with Chan, in or around December of 2020, Plaintiff applied for a position at a different hospital, outside of the PeaceHealth system. She received an interview and was told that she needed a current reference or performance evaluation. When Plaintiff went to Chan to tell him about the position, Chan told Plaintiff that he would give her a positive reference or evaluation. Based on these representations by Chan, Plaintiff listed him as a reference.

15.

In January of 2021, Plaintiff learned she was not offered a position at the other non-PeaceHealth hospital, despite her qualifications. After Plaintiff learned she was not offered a position, she communicated with the non-PeaceHealth hospital and learned Chan had given her a negative evaluation and/or reference. Plaintiff was shocked. She believed Chan's actions were in retaliation for her outspokenness about health and safety concerns at PeaceHealth. That same month, Plaintiff communicated to PeaceHealth Human Resources and to Chan her concerns that the negative reference was in retaliation for her protected activities of reporting health and safety concerns. She requested communication with Chan and Human Resources to resolve her complaint about retaliation. PeaceHealth did not resolve her complaint.

///

PAGE 5 - COMPLAINT

16.

In February of 2021, Plaintiff continued to request resolution of her retaliation complaint and underlying negative performance evaluation she had been given by Chan. Plaintiff never received resolution of her complaint of retaliation or the negative evaluation.

17.

Later that month, on or about February 18, 2021, Plaintiff emailed a complaint to PeaceHealth managers and administrators Victor Garcia, Jimmy Chan, Jonathan Chase, Holly Tyler and Laurie Conroy. In the email, Plaintiff complained of retaliation for her protected reporting of health and safety concerns. Also in February of 2021, Plaintiff filed a health and safety complaint with the Occupational Safety and Health Administration. Chan resigned his employment later that month.

18.

In August of 2021, Plaintiff started a Facebook group for PeaceHealth nursing staff to discuss their concerns. The group was not for managers, but instead for nurses and other rank-and-file employees. Plaintiff was one of the group's moderators.

19.

On September 5, 2021, Plaintiff emailed PeaceHealth's CEO Sean Gregory regarding workplace issues and the high patient case load in the ICU. Her concerns included not having enough staff to care for patients safely, medication shortages, and not having enough staff to adequately respond to the needs of patients' family members. In the email, Plaintiff also expressed that she had asked fellow co-workers to inform PeaceHealth management if they are not feeling safe or having other concerns about the workplace. This letter to CEO Gregory was also posted to

PAGE 6 - COMPLAINT

the Facebook group's page and was copied to several people, including Chief Nursing Officer Holly Tyler and another supervisor, Lee Cushway.

20.

On September 6, 2021, CEO Gregory responded by email to Plaintiff indicating that PeaceHealth was working on the staffing problem Plaintiff identified in her September 5th complaint and that PeaceHealth had a shared concern about staffing.

21.

On September 7, 2021, Collins replied to CEO Gregory and described specific incidents to illustrate the staffing concerns. She also noted that nurses were operating despite their own "numbness, panic, anger, and grief" and were being overwhelmed by the strains of the pandemic. Plaintiff requested PeaceHealth provide hazard pay, crisis charting, and ancillary staff to support the nurses' lifesaving work.

22.

On or about September 10, 2021, Plaintiff was offered an interview with KATU regarding working conditions affecting nurses during the pandemic. Plaintiff reached out to Chief Nursing Officer Holly Tyler ("Tyler") to notify Tyler that she had agreed to be interviewed about the working conditions at PeaceHealth affecting nurses. Tyler responded positively and did not indicate to Plaintiff that the interview would violate any policies at PeaceHealth.

23.

On or about September 14, 2021, Plaintiff attended a Staffing Committee meeting at PeaceHealth. Also at the meeting was CEO Gregory and Cushway. During the meeting Plaintiff spoke up about staffing issues, retention of staff, and how the lack of ancillary medical staff left

PAGE 7 - COMPLAINT

nurses in an unsafe position at work. During the meeting, Plaintiff also expressed the need for hazard pay.

24.

On or about September 15, 2021, Plaintiff was interviewed by KATU about the working conditions at PeaceHealth. This was the interview she had notified Tyler about on September 10, 2021 and had received no response. Shortly after Plaintiff's interview, Cushway contacted Plaintiff to discuss it. Cushway stated that CEO Gregory had instructed Cushway to notify Plaintiff that the interview might violate the PeaceHealth media policy. Plaintiff explained she was not aware that the interview would violate a media policy and specifically asked whether there would be negative consequences if the interview aired as scheduled the following day. Cushway indicated they would have to wait and see what happened after the interview aired. Later that day, Cushway left a message for Plaintiff and told her that she was being placed on administrative leave and not to come to work the following day. Plaintiff later learned that she was being investigated for a possible violation of PeaceHealth's "News Media Contact and Release of Information Procedure."

25.

On September 16, 2021, Plaintiff's interview was aired as part of the KATU evening news program and the KATU article and interview was posted to the KATU website. The article and interview concerned the worker crisis in health care during the pandemic. That same day, Plaintiff emailed CEO Gregory about being placed on administrative leave and questioned whether placing her on leave was consistent with PeaceHealth's mission. She also referred to her earlier reported concerns about retaliation for speaking up about health and safety issues at PeaceHealth and within the health care industry.

PAGE 8 - COMPLAINT

26.

On September 17, 2021, PeaceHealth held an investigatory interview of Plaintiff. During that interview, Plaintiff learned PeaceHealth placed her on administrative leave due to (1) the alleged violation of the media policy, and (2) an alleged concern about an incorrect dosage of medication being given to a patient ("Patient A"). The investigatory interview was Plaintiff's first notice of the medication dosage concern concerning Patient A. At the investigatory interview, Plaintiff was told that the first complaint (about the media policy) had now been resolved but that PeaceHealth was still investigating the second complaint. Plaintiff was told the complaint about medication dosage did not require that she remain on administrative leave while it was investigated. Nevertheless, PeaceHealth kept Plaintiff out on administrative leave four more months while the second complaint was investigated. Plaintiff later learned PeaceHealth reviewed several months of records during that time.

27.

Later in September of 2021, there was a second investigatory interview. At that meeting, the original allegations regarding incorrect medication dosage of Patient A were amplified and additional charges were alleged concerning Plaintiff's administration of medication (the "medication complaint").

28.

On or about October 2, 2021, Plaintiff filed a whistleblower complaint with the Health Department. Based upon information and belief, PeaceHealth was aware of the complaint being filed shortly thereafter.

///

PAGE 9 - COMPLAINT

29.

On October 25, 2021, PeaceHealth further expanded the medication complaint and informed Plaintiff she was now being investigated for alleged narcotics diversion. PeaceHealth refused to disclose any details about the narcotics diversion allegation but demanded Plaintiff submit not only to a urinalysis, but also hair follicle testing. PeaceHealth's drug testing policy does not include hair follicle testing, only urinalysis and breathalyzer. PeaceHealth claimed that they would need 200 hair follicle samples from Plaintiff, causing Plaintiff anxiety about having a bald patch or other obvious sign of hair being removed. Because of the large number of hair strands/follicles required, Plaintiff questioned the need for such testing. PeaceHealth refused to answer Plaintiff's questions about the testing but contended that if Plaintiff refused the hair follicle testing it would be reported as an "automatic positive" drug test and could lead to scrutiny by Washington State's Board of Nursing ("Board of Nursing"). Plaintiff felt she had no choice and submitted to both the urinalysis and hair follicle testing. Plaintiff later learned that PeaceHealth had not required hair follicle testing of other employees suspected of narcotics diversion. Both the hair follicle and urinalysis testing were negative, demonstrating no narcotics usage by Plaintiff. The experience of having to submit to hair follicle and urinalysis testing was humiliating and incredibly stressful. PeaceHealth management also informed Plaintiff that it was filing a complaint against her for narcotics diversion with the Board of Nursing. Plaintiff was fearful she would have to defend herself in a licensing board investigation because of the false complaint to the Board of Nursing and knew such a complaint could jeopardize her license to practice as a registered nurse and her career as a health care provider.

///

PAGE 10 - COMPLAINT

Oldham Law Office, LLC
12275 SW 2ND Street
Beaverton, OR 97005
Tel: (503) 596-2696

30.

On or about December 16, 2021, Plaintiff was informed by the Board of Nursing that the complaint they received from PeaceHealth had been closed because there was insufficient evidence to support the alleged charge. In the notice Plaintiff received from the Board of Nursing, she learned for the first time that PeaceHealth's complaint against her was not for narcotics diversion as PeaceHealth had first threatened to file in October of 2021 but was instead a complaint that she had been practicing outside the scope of her nursing license.

31.

On or about December 16, 2021, Plaintiff learned that PeaceHealth had stopped paying her, although her employer continued to keep her out of work on administrative leave. Through the WSNA, on or about December 16, 2021, Plaintiff filed a complaint with her employer protesting PeaceHealth's failure to pay her wages.

32.

Plaintiff has not received any pay from PeaceHealth from the work period of December 5, 2021-January 7, 2022. Plaintiff also learned, in or about December of 2021, that PeaceHealth had been applying her paid leave banks to fund part of her paycheck while she was out on administrative leave, without her authorization and without notifying her that it was doing so. Plaintiff and the WSNA protested Plaintiff's paid leave being used while she was being held out on administrative leave by PeaceHealth and argued that it violated the collective bargaining agreement and was not allowed.

///

///

PAGE 11 - COMPLAINT

33.

On or about January 7, 2022, PeaceHealth terminated Plaintiff's employment. The termination alleged that Plaintiff's administration of medication and documentation were insufficient and violated PeaceHealth policy. The allegations were unfounded and, based upon information and belief, were based on documentation that was falsified in whole or in part.

34.

Other nurses at PeaceHealth alleged to have violated the same or similar policies PeaceHealth accused Plaintiff of violating were not terminated. Plaintiff was singled out due to her whistleblowing regarding health and safety issues at PeaceHealth during the pandemic. In addition, PeaceHealth attempted to negatively impact Plaintiff's nursing career by falsifying the documentation supporting her termination and filing a knowingly false complaint with the Board of Nursing.

35.

Plaintiff filed a grievance through the WSNA to contest her termination as without just cause. Plaintiff's grievance is being processed as part of the normal complaint resolution process outlined in the collective bargaining agreement between the WSNA and PeaceHealth.

**FIRST CLAIM FOR RELIEF**

**Whistleblower Retaliation in Violation of RCWA 43.70.075(1)(c)**

36.

Plaintiff realleges and incorporates paragraphs 1-35.

///

///

PAGE 12 - COMPLAINT

37.

Plaintiff engaged in protected activities when she reported to the Health Department her concerns about quality of care of patients, including concerning staffing issues and concerns about patient and staff health and safety issues at PeaceHealth.

38.

PeaceHealth retaliated against and discriminated against Plaintiff because of her advocacy for increasing quality of care and reporting concerns about patient and staff safety. Adverse employment actions PeaceHealth engaged in include, but are not limited to:

(a) Denying Plaintiff a promotional opportunity she was qualified for when the Rapid Response Team position was not posted;

(b) Giving Plaintiff a poor reference and/or evaluation when she sought employment with a non-PeaceHealth employer, as alleged in paragraphs 14-16 of the complaint;

(c) Subjecting Plaintiff to undue scrutiny, investigations, and discipline and being treated differently and less favorably when compared to her co-workers, including subjecting Plaintiff to invasive and humiliating drug-testing without sufficient cause;

(d) Continuing Plaintiff on administrative leave for several months, beginning on or about September 15, 2021, despite telling Plaintiff that the matter being investigated was not something that required she be continued on administrative leave;

(e) Failing to pay Plaintiff properly and lawfully during her administrative leave, including reducing her pay without notice and supplementing with leave banks without notice and including approximately five weeks of non-payment of wages from December 5, 2021-January 7, 2022;

PAGE 13 - COMPLAINT

OLDHAM LAW OFFICE, LLC
12275 SW 2ND STREET
BEAVERTON, OR 97005
TEL: (503) 596-2696

(f)  Terminating Plaintiff from her employment on January 7, 2022 and falsifying information to support the termination; and

(g)  Making a knowingly false complaint to the Board of Nursing, jeopardizing her license.

39.

The Washington Health Care Act (WHCA) provides protection and remedies to healthcare professionals who have acted as whistleblowers under the law. Plaintiff acted as a whistleblower under the act when she reported concerns to the Health Department.

40.

On or about the following dates, Plaintiff acted as a whistleblower reporting patient quality of care issues, patient safety issues and staff health and safety issues: March 2020; April 2020; April 27, 2020; January 2021; February 2021; February 18, 2021; September 5, 2021; September 7, 2021; September 14, 2021; and October 2, 2021.

41.

Plaintiff is entitled to reinstatement of her employment with payment of back pay for her lost wages and benefits in an amount to be determined at trial, including prejudgment interest, because of the unlawful conduct.

42.

Should reinstatement be unfeasible, Plaintiff is entitled to front pay damages in an amount to be determined at trial, including prejudgment interest, because of the unlawful conduct.

43.

Plaintiff is entitled to an award of compensatory damages for her pain, suffering, humiliation, disappointment, inconvenience, and emotional distress caused by PeaceHealth.

PAGE 14 - COMPLAINT

44.

Plaintiff is entitled to an award of punitive damages sufficient to deter the illegal retaliatory conduct of PeaceHealth in the future.

45.

Plaintiff is entitled to her attorney fees, her costs including expert witness fees, and disbursements, to be determined after trial.

## SECOND CLAIM FOR RELIEF

### Wrongful Discharge in Violation of Public Policy

46.

Plaintiff realleges and incorporates paragraphs 1 through 40.

47.

The 2017 Staffing Transparency and Accountability Act, RCW 70.41.420, expresses a clear public policy in Washington state for the determination and implementation of safe staffing in hospitals such as PeaceHealth, to ensure patient and staff safety. Washington state laws administered by the Health Department, including RCW 70.41.155, express a clear public policy in favor of ensuring that patient quality of care at hospitals, including PeaceHealth, is maintained and that complaints about quality of care or the safety of patients is investigated. Washington state laws administered by the Health Department, including RCW 70.41.430, express a clear public policy of ensuring the prevention and control of pathogens, such as COVID-19, by hospitals such as PeaceHealth. Washington state also has a clear public policy of protecting whistleblowers who report safety concerns to the Health Department, including the protections outlined in RCW 43.70.075, which provides protection to employees who complain in good faith to the Health

PAGE 15 - COMPLAINT

Department. Washington state law also has a clear public policy of protecting whistleblowers who file complaints with the Occupational Safety and Health Administration, including the protections outlined in RCW 49.17.160. Washington state also has a clear public policy of protecting employees who complain about unpaid wages, including the protections outlined in RCW 49.46.100.

48.

Discouraging nurses such as Plaintiff from complaining to regulatory authorities such as the Health Department and Occupational Safety and Health Administration, to internal administrators and managers, and to the public, when they believe that patient safety or staff safety is being threatened at a hospital would jeopardize the public policies embodied in the Washington laws identified in paragraph 47.

49.

Discouraging nurses such as Plaintiff from complaining to internal administrators and managers when they believe that Washington's wage and hour laws are being violated would jeopardize the public policies embodied in the Washington laws identified in paragraph 47.

50.

Plaintiff exercised a legal right available to her when she made reports to the Health Department and to the Occupational Safety and Health Administration. Plaintiff also reported PeaceHealth's misconduct to these outside agencies and internally, to managers, executives, and human resources at PeaceHealth, as alleged herein.

///

///

PAGE 16 - COMPLAINT

51.

PeaceHealth's termination of Plaintiff from her position at PeaceHealth after she made the complaints described herein, discourages nurses and health care providers from making such complaints. In the alternative, PeaceHealth's termination of Plaintiff after she exercised her legal right and/or reported employer misconduct to the Health Department and to the Occupational Safety and Health Administration was retaliatory.

52.

PeaceHealth terminated Plaintiff because she made complaints and filed reports about patient quality of care, safe staffing, hygiene and prevention of infectious disease, and patient safety. In the alternative, PeaceHealth was motivated to terminate Plaintiff because she made such complaints and filed reports with outside agencies and internally. All purported reasons PeaceHealth has offered for Plaintiff's termination are pretextual.

53.

PeaceHealth wrongfully discharged Plaintiff from her employment.

54.

Plaintiff has been damaged by the actions of PeaceHealth and is entitled to economic damages for her back wages and front wages, as described in paragraphs 41 and 42.

55.

Plaintiff has been damaged by the actions of PeaceHealth and is entitled to compensatory damages for her emotional distress, as described in paragraph 43.

///

///

PAGE 17 - COMPLAINT

56.

Plaintiff is entitled to an award of punitive damages, for the reasons alleged in paragraph 44.

57.

Plaintiff is entitled to her costs and disbursements, including expert witness fees.

**THIRD CLAIM FOR RELIEF**

**Unpaid Wages in Violation of 29 U.S.C. §206(b)**

58.

Plaintiff realleges and incorporates paragraphs 1 to 35.

59.

At the time PeaceHealth terminated Plaintiff from her employment, she was owed wages for the period of December 5, 2021-January 7, 2022. When she was terminated, Plaintiff was also owed an unknown amount of wages due to PeaceHealth using Plaintiff's paid leave banks to supplement Plaintiff's paychecks while she was on administrative leave, without notifying her that it was doing so or receiving her permission to do so.

60.

Plaintiff has never been paid any wages for the period of December 5, 2021-January 7, 2022 in violation of the FLSA's minimum wage requirements pursuant to 29 U.S.C. §206(b).

61.

Plaintiff has raised the matter of her unpaid wages repeatedly with PeaceHealth, and through the WSNA, demanding payment of wages owed. To date, Plaintiff has not been paid for this work period.

PAGE 18 - COMPLAINT

62.

PeaceHealth's violation of the FLSA is willful.

63.

As a direct result of Defendant's willful failure to pay all wages due, Plaintiff is owed at least $9,000, plus prejudgment interest, with the exact amount owed to be proven at trial.

64.

Plaintiff is entitled under 29 U.S.C. §216(b) to recover an amount equal to the amount of proven unpaid wages as liquidated damages.

65.

Plaintiff is entitled to recover attorney's fees, expenses, and litigation costs pursuant to 29 U.S.C. §216(b).

## FOURTH CLAIM FOR RELIEF

### Retaliation for filing a Complaint of Unpaid Wages in Violation of 29 U.S.C. §215(a)

66.

Plaintiff realleges and incorporates paragraphs 1 to 35 and 59 to 62.

67.

Beginning on or about December 16, 2021, Plaintiff filed a complaint with PeaceHealth, though WSNA, asserting that she had not been paid all wages owed and that she had not been paid at all beginning on December 5, 2021.

68.

Plaintiff was terminated from her employment on January 7, 2022, less than a month after she filed a complaint with her employer about unpaid wages.

PAGE 19 - COMPLAINT

69.

Plaintiff's complaints to PeaceHealth included improper deductions from her paycheck and PeaceHealth's access of her leave banks to pay part of Plaintiff's checks without notice or consent from Plaintiff.

70.

PeaceHealth terminated Plaintiff because she complained about unpaid wages owed.

71.

PeaceHealth's violation of the FLSA is willful.

72.

As a direct result of Defendant's willful termination of Plaintiff, she is owed economic damages for her back wages plus prejudgment interest, with the exact amount owed to be proven at trial.

73.

Plaintiff is entitled to recover attorney's fees, expenses, and litigation costs pursuant to 29 U.S.C. § 216(b).

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

a) An order finding Defendant violated the RCW 43.70.075(1)(c) and that Defendant wrongfully discharged Plaintiff in violation of public policy;

b) An order requiring Defendant to reinstate Plaintiff to her former position;

PAGE 20 - COMPLAINT

c)  Economic damages for Plaintiff's back wages, including prejudgment and postjudgment interest, as allowed;

d)  Economic damages for Plaintiff's front wages, should reinstatement be unfeasible, including prejudgment and postjudgment interest, as allowed;

e)  Compensatory damages for Plaintiff's emotional distress, including her pain, suffering, humiliation, disappointment and inconvenience;

f)  Punitive damages in an amount to be determined at trial sufficient to deter the unlawful retaliatory conduct of PeaceHealth in the future;

g)  Liquidated damages in an amount equal to Plaintiff's unpaid wages pursuant to 29 U.S.C. §260;

h)  Attorney's fees, costs, and expenditures; and

i)  Such other and further relief as the Court deems just and equitable to Plaintiff.

DATED this 15th day of December, 2022.

OLDHAM LAW OFFICE, LLC
/s/Katelyn S. Oldham

_____

Katelyn S. Oldham, OSB No. 024115
Phone: (503) 596-2696
Email: katelyn@oldhamlawoffice.com

Of Attorneys for Plaintiff

OLDHAM LAW OFFICE, LLC
12275 SW 2ND STREET
BEAVERTON, OR 97005
TEL: (503) 596-2696